**TENANTS OF 500 23RD STREET, N.W., et al., Petitioners,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent,**

**Columbia Plaza Limited Partnership, Intervenor.**

No. 89–1429.

District of Columbia Court of Appeals.

Jan. 24, 1992.
As Modified on Denial of Rehearing
Dec. 22, 1992.

Rogers, C.J., would vote for rehearing en banc and filed statement.

Ferren, J., would vote for rehearing en banc and filed statement.

James P. McGranery, Washington, DC, for petitioner.

John Payton, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Lutz Alexander Prager, Asst. Deputy Corp. Counsel, Washington, DC, for respondent.

Vincent Mark J. Policy, Washington, DC, for intervenor.

Before TERRY and FARRELL, Associate Judges, and BELSON, Senior Judge.

FARRELL, Associate Judge:

Section 902 of the Rental Housing Act of 1985 (the Act) provides that, except in evic-

tion cases, courts may "award reasonable attorney's fees to the prevailing party in any action under [the Act]."[1]  D.C.Code § 45–2592 (1990).  This motion requires us to determine the proper standard under the Act for awarding attorney's fees to a prevailing housing provider.[2]

## I.

In September 1987, intervenor Columbia Plaza Limited Partnership, a "housing provider" under the Act,[3] filed several capital improvement petitions before the Rent Administrator pursuant to § 210(i), D.C.Code § 45–2520(i).[4]  A small group of tenants of the property contested these petitions.  Initially, the Rent Administrator dismissed the petitions on procedural grounds.  On appeal to the Commission, that decision was reversed and the petitions were remanded for consideration on the merits.  After a full hearing, the Rent Administrator again dismissed the petitions.  The housing provider appealed and the Commission reversed the dismissal, ordering rent ceiling adjustments.  The tenants sought judicial review by this court of the Commission's decision.  *See* § 219, D.C.Code § 45–

2529.  Although the tenants raised eight claims of error before this court, we "affirm[ed]" the Commission's order in all respects" and addressed only a few points raised by the tenants that "merit[ed] discussion."  *Tenants of 500 23rd St., N.W. v. District of Columbia Rental Hous. Comm'n,* 585 A.2d 1330, 1331 (D.C.1991).  The housing provider, the "prevailing party" in this action,[5] now moves under § 902, D.C.Code § 45–2592, for an award of attorney's fees for services rendered by counsel during the course of judicial review.[6]

## II.

On its face § 902, D.C.Code § 45–2592, is silent about the standards that should serve to guide the award of attorney's fees to prevailing parties in cases brought under the Act.  To assist in interpreting this provision, we have turned to the underlying legislative purpose of the section.  *See Ungar v. District of Columbia Rental Hous. Comm'n,* 535 A.2d 887, 892 (D.C.1987).  On the one hand, § 902 was designed to deter "frivolous cases" litigated under the Act.  The author of the provision, Councilmem-

---

**1.** Section 902 also authorizes the Rent Administrator and the Commission to award attorney's fees to a prevailing party.  D.C.Code § 45–2592.  Subject perhaps to the point made at page 491, *infra,* the standards we adopt for attorney's fee awards for litigation in the courts apply equally to awards made by the administrative bodies, "since the identical statutory language operates at all levels."  *Alexander v. District of Columbia Rental Hous. Comm'n,* 542 A.2d 359, 360 (D.C. 1988).

**2.** The court reserved this issue in *Hampton Courts Tenants' Ass'n v. District of Columbia Rental Hous. Comm'n,* 573 A.2d 10 (D.C.1990).

**3.** Under the Act, "housing provider" means "a landlord, an owner, lessor, sublessor, assignee, or their agent, or any other person receiving or entitled to receive rents or benefits for the use or occupancy of any rental unit within a housing accommodation within the District."  Section 103(15), D.C.Code § 45–2503(15).

**4.** Section 210(i), D.C.Code § 45–2520(i), provides:

The housing provider may petition the Rent Administrator for approval of the rent adjustment for any capital improvements made under subsection (g) of this section, if the petition is filed with the Rent Administrator with-

in 10 calendar days from the installation of the capital improvements.

In turn, § 210(g), D.C.Code § 45–2520(g), provides:

The housing provider may make capital improvements to the property before the approval of the rent adjustment by the Rent Administrator for the capital improvements where the capital improvements are immediately necessary to maintain the health or safety of the tenants.

**5.** None of the parties disputes the housing provider's status as the "prevailing party."  Thus, we need not make the threshold determination of whether the movant "prevailed" for the purposes of awarding attorney's fees under the Act.  *See Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

**6.** The housing provider also filed a motion for an award of attorney's fees before the Commission for legal services rendered in this case at the administrative level.  Section 902, D.C.Code § 45–2592.  The Commission denied the housing provider's motion.  *Columbia Plaza Ltd. Partnership v. Tenants of 500 23rd St., N.W.,* CI 20,266–20,268 (RHC May 30, 1991).  That decision by the Commission is not the subject of this appeal.

ber Clarke, "put [the counsel fee provision] in because ... sometimes frivolous cases are brought and sometimes attorneys' fees are justified on both sides of the issue." [7] Remarks of Councilmember Clarke, Transcript of District of Columbia Council Proceedings at 104 (Nov. 14, 1980). On the other hand, we have recognized that § 902 was intended to encourage compliance with the Act by facilitating remedial litigation by tenants. In *Ungar, supra,* "we infer[red] from the statutory scheme that ... the purposes of the attorney's fee provision are to encourage tenants to enforce their own rights, in effect acting as private attorneys general, and to encourage attorneys to accept cases brought under the [Act]." 535 A.2d at 892. *See also Hampton Courts Tenants' Ass'n,* 573 A.2d at 12, 13 (noting *Ungar*'s "adopt[ion of] the 'private attorney general' analysis stated by the Supreme Court in explication of the [Civil Rights Act of 1964]").

■ Consistent with the goal of encouraging litigation by tenants acting as "private attorneys general," we interpret § 902 as entitling prevailing tenants to a presumptive award of attorney's fees. *See Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968) (construing 1964 Civil Rights Act). Indeed, we have already held that under § 902 prevailing tenants, regardless of their position in the litigation, should generally be awarded attorney's fees though these "may be withheld, in the court's discretion, if the equities indicate otherwise." *Ungar,* 535 A.2d at 892; *see also Tenants of 2301 E St., N.W. v. District of Columbia Rental Hous. Comm'n,* 580 A.2d 622, 626 (D.C.1990); *Hampton Courts Tenants' Ass'n, supra; Alexander,* 542 A.2d at 360–61.[8]

■ Intervenor argues that a housing provider is entitled to the same presumptive award of attorney's fees as are prevailing tenants. It reasons that when a housing provider files a meritorious capital improvements petition seeking a rent adjustment under § 210(i), D.C.Code § 45–2520(i), it furthers the purposes of the Act in general and specifically of § 210, and so is properly cast in the role of "private attorney general." This argument, however, while emphasizing the goals of other sections of the Act, does not focus adequately on the specific goals of the attorney's fee provision, which we conclude must be our guide. *See, e.g., Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. at 402, 88 S.Ct. at 966 (analyzing Congress' purpose in enacting counsel fee provision of Title II of Civil Rights Act of 1964 to determine criteria for awards to prevailing plaintiffs); *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 417–22, 98 S.Ct. 694, 698–701, 54 L.Ed.2d 648 (1978) (analyzing legislative history of counsel fee provision of Title VII of Civil Rights Act of 1964 to determine criteria for awards to prevailing defendants). While the Act does grant rights for housing providers and authorizes capital improvement petitions, nothing in the text of § 902 or its legislative history indicates that the legislature sought to encourage or facilitate housing provider enforcement actions by attorney's fee awards in favor of housing providers, or to create an incentive for attorneys to accept housing provider cases by means of fee awards against unsuccessful tenants. *See Ungar,* 535 A.2d at 892; *Hampton Courts Tenants' Ass'n,* 573 A.2d at 12. Since housing provider litigation fails to serve these goals of the attorney's fee provision of the Act,

7. The attorney's fee provision of the Act originated in the Rental Housing Act of 1980, D.C.Code § 45–1592 (1981). The 1980 Act was replaced by the Rental Housing Act of 1985. The attorney's fee provision, however, remained "virtually unchanged" in the 1985 Act. *Alexander,* 542 A.2d at 359 n. 2.

8. The housing provider contends that our previous generous interpretation of the statute in favor of tenants unfairly exposes housing providers to liability for attorney's fees for even

"the slightest procedural mis-step by a housing provider, even one who appears *pro se.*" A division of the court, however, is not free to re-examine the soundness of those decisions. Moreover, while our decisions presumptively entitle prevailing tenants to an award, they nevertheless require consideration of the surrounding circumstances in each case and authorize the denial of attorney's fees to prevailing tenants when the equities of the situation dictate that result.

we hold that prevailing housing providers do not enjoy a presumptive entitlement to attorney's fee awards.

■ That, however, does not end the analysis. Presumptions aside, our reading of § 902 makes clear to us, as it was to the Supreme Court in interpreting identical statutory language enacted under similar circumstances, that the legislature intended something else besides facilitating remedial litigation by tenants under the Act. As the remarks of Councilmember Clarke, *supra,* indicate, the legislature also wanted to protect housing providers "from burdensome litigation having no legal or factual basis." *Christiansburg Garment Co.,* 434 U.S. at 420, 98 S.Ct. at 700. To accommodate these sometimes competing goals, we conclude that attorney's fees may be assessed in favor of a prevailing housing provider when the litigation of tenants is "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg,* 434 U.S. at 421, 98 S.Ct. at 700; *see Hamer v. County of Lake,* 819 F.2d 1362, 1366–67 (7th Cir. 1987), *cert. denied,* 493 U.S. 849, 110 S.Ct. 146, 107 L.Ed.2d 104 (1989). This interpretation of the statute has been adopted by the Rental Housing Commission for attorney's fee awards to prevailing housing providers in several categories of litigation at the administrative level. *See Hagner Management Corp. v. Rutherford,* TP 12,117 (RHC Sept. 8, 1986) (prevailing housing provider in tenant petition case); *Columbia Plaza Ltd. Partnership v. Tenants of 500 23rd St., N.W.,* CI 20,266–20,268 (RHC May 30, 1991) (prevailing housing provider in capital improvement case); *Tenants of 1255 New Hampshire Ave., N.W. v. Hamilton House Ltd. Partnership,* HP 20,388 (RHC May 30, 1991) (prevailing housing provider in hardship petition case). That reading of the statute by the agency charged with its enforcement confirms our judgment of the appropriateness of this standard.

The housing provider argues for a looser reading of § 902 which would allow an award of fees to a prevailing housing provider in the "sound discretion" of the court, "taking into account the relevant facts of the particular case." A purely discretionary standard, it urges, would better permit a prevailing housing provider to recover attorney's fees expended in resisting irrelevant and erroneous arguments pressed by tenants over years of litigation.[9] Though this proposed standard appears on the surface to be a "straightforward" and "evenhanded" interpretation of § 902, we do not think it is consistent with the statutory purpose of facilitating tenant litigation under the Act but at the same time deterring "frivolous cases" on "both sides of the issue." Remarks of Councilmember Clarke, *supra; see Christiansburg Garment Co.,* 434 U.S. at 418–19, 98 S.Ct. at 698–99. As did the Supreme Court, we think the *Christiansburg* standard best accommodates the "inherent tension" between these goals. *Hamer,* 819 F.2d at 1366.

The housing provider further argues that the *Christiansburg* standard, developed under the federal civil rights laws, is inapposite to the fee award provision of the Rental Housing Act because the underlying policies of the former—combatting discrimination—are not those of the Rental Housing Act, which carefully balances the rights of landlords and tenants. *See Tenants of 2301 E St., N.W.,* 580 A.2d at 628 n. 11. To accept this argument, however, would be to ignore the remarkable similarities of language and intent between the attorney's fee provisions of the two laws, and the fact that this court has heretofore looked to the former in interpreting our fee award provision. *Hampton Courts Tenants' Ass'n,* 573 A.2d at 12. Furthermore, many courts have applied the *Christiansburg* standard

---

**9.** The housing provider is not alone in pointing to economic factors to support its interpretation of the statute. The Commission and the tenants assert that housing providers are in a better financial position than tenants to litigate under the Act because they, unlike individual tenants, can recover attorney's fees as business costs. We do not pursue this inquiry but note only that, as in the context analyzed by the Supreme Court in *Christiansburg,* there may be "equitable considerations on both sides of this question." 434 U.S. at 422–23 n. 20, 98 S.Ct. at 701 n. 20.

to other federal and state fee-shifting statutes.[10]

We emphasize that this standard is not a reformulation of the traditional "bad faith" exception to the American Rule. *See, e.g., Dalo v. Kivitz,* 596 A.2d 35, 39–40 (D.C. 1991); *Goffe v. Pickard,* 588 A.2d 265, 271 (D.C.1991) (defendant liable for attorney's fees under "bad faith" exception to American Rule when "conduct 'was vexatious and designed to avoid responsibility to the plaintiffs in bad faith'"). Under § 902, a finding of "subjective bad faith" is unnecessary to an award of attorney's fees in favor of a housing provider, provided the tenants' litigation was "frivolous, unreasonable, or without foundation." *Christiansburg,* 434 U.S. at 421, 98 S.Ct. at 700. The statutory standard, therefore, is less stringent than our common-law "bad faith" exception to the American Rule.

## III.

Applying these principles, we must consider whether an award in favor of the prevailing housing provider is justified in this case. Under the *Christiansburg* test, a prevailing housing provider may be awarded attorney's fees when the tenants' position was "frivolous, unreasonable, or groundless" or the tenants "continued to litigate after it clearly became so." 434

U.S. at 422, 98 S.Ct. at 701. It follows from the latter branch that, while a claim may have had merit before the Commission, it is not necessarily meritorious before this court because the tenant "continued to litigate after it clearly became" unreasonable or groundless. *See Harris v. Group Health Ass'n,* 213 U.S.App.D.C. 313, 317–18, 662 F.2d 869, 873–74 (1981).

■ As explained at the outset, petitioners raised eight claims of error before this court, and we found it necessary to address approximately half of them, though we treated one other briefly in a final footnote. Thus it is not possible for us to say that petitioners' appeal taken as a whole was frivolous, unreasonable, or groundless. On the other hand, there is no denying that petitioners' insistence on renewing virtually every claim raised before (and rejected by) the Commission put the housing provider to the necessity of briefing, and preparing to argue orally, at least several issues we think prudent counsel ought not to have pursued in this court. Thus we face an issue that has troubled other courts in related fee award contexts, namely, whether to divide a litigant's claims into reasonable (though unsuccessful) and unreasonable ones. As a general rule, it appears "that reviewing courts are hesitant to impose a requirement on the lower courts and liti-

10. *See, e.g., Nemeroff v. Abelson,* 620 F.2d 339, 349–50 (2d Cir.1980) (when prevailing defendant applied for attorney's fees, court held that "minimum standard for an award under § 9(e) of the Exchange Act [of 1934, 15 U.S.C. § 78i(e)] is that set forth in *Christiansburg*"); *National Wildlife Fed'n v. Consumers Power Co.,* 729 F.Supp. 62, 64 (W.D.Mich.1989) (under § 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d) (1988), prevailing defendant is entitled to award of attorney's fees "only where the plaintiff's claim is frivolous, meritless or vexatious"); *National Union of Hosp. & Health Care Employees v. Southeast Volusia Hosp. Dist.,* 436 So.2d 294, 296–97 (Fla.Dist.Ct.App.1983) (court affirms award by commission under *Christiansburg* standard to prevailing defendant under Florida's Public Employees Relations Act); *Dobie v. Liberty Homes, Inc.,* 53 Or.App. 366, 373, 632 P.2d 449, 453 (1981) ("the reasoning of the Supreme Court [in *Christiansburg*] regarding guidelines for awarding attorney fees is applicable in construing the attorney fee provision of our [labor] statute"); *Community Cause v. Boatwright,* 195 Cal.App.3d 562, 573–76, 240 Cal.

Rptr. 794, 801–03 (1987) (*Christiansburg* standards apply to awards to prevailing defendants under California's Political Reform Act); *People v. Roger Hedgecock for Mayor Comm.,* 183 Cal. App.3d 810, 815–17, 228 Cal.Rptr. 424, 427–28 (1986) (same); *Whaley v. Alaska Workers' Compensation Bd.,* 648 P.2d 955, 959–60 (Alaska 1982) (appellate rule construed according to *Christiansburg* standards when granting attorney's fees to employer-defendant in worker's compensation case); *Village of Palm Springs v. Retirement Builders, Inc.,* 396 So.2d 196, 198–99 (Fla.Dist.Ct.App.), *pet. for rev. denied,* 402 So.2d 614 (Fla.1981) (fee-shifting provision of Florida's utility consumers' protection law interpreted according to *Christiansburg*). *But see State v. Black,* 100 Wash.2d 793, 803–07, 676 P.2d 963, 970–71 (1984) (rejecting *Christiansburg* standard for awarding attorney's fees to prevailing defendants, court applied a balancing test because "the policy considerations [supporting Washington's state antitrust law] are significantly different [than Title VII of the Civil Rights Act of 1964]").

gants which would lead to the need to distinguish between frivolous and nonfrivolous claims in every case." *Hamer,* 819 F.2d at 1369.[11] An exception easy to apply, perhaps because affecting so few cases, is that a litigant will not "ward off" fees "by the happenstance of including one colorable (though losing) claim amidst an ocean of frivolous ones." *Id.* (quoting *Hill v. Norfolk & Western Ry.,* 814 F.2d 1192, 1200 (7th Cir.1987)). Adopting the *Christiansburg* standard, however, does not compel us to reject a housing provider's request for fees only if the vast preponderance of the tenants' arguments were unreasonable (an "ocean of frivolous" ones compared to one or two colorable ones). That standard may be appropriate in awarding fees at the agency level (an issue we do not decide), but as *Christiansburg* makes clear, *continuing* to litigate a claim after its lack of merit should have been apparent may provide the basis for a fee award. This court routinely expects litigants to engage in some winnowing of issues at the appellate level. *Cf. Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Therefore, we hold that a prevailing housing provider's request for attorney's fees may be premised on individual claims or issues raised by tenants that were frivolous, unreasonable, or groundless. This holding, we caution, rests on an interpretation of § 902 of the Act which expressly provides for a shift in attorney's fees; we do not decide whether a similar differentiation among issues would be appropriate in applying, for example, D.C.App.R. 38 (1990) (costs and damages for frivolous appeal); *see Tupling v. Britton,* 411 A.2d 349 (D.C.1980).

■ Upon examining the entire record, we have concluded that Issues III, IV, and V, as set forth in petitioners' brief challenging the Commission's order, are groundless under the standard adopted. First, the Commission quite properly rejected petitioners' argument concerning improper allocation of the cost of improvements as "offered [with] no explanation as to what this means and no argumentation" (Issue III). Second, the Commission's refusal to dismiss the petitions for failure of the engineer (an independent contractor) to produce a file pursuant to subpoena to the housing provider was entirely warranted in view of petitioners' failure to object on this ground at the hearing (Issue IV). Third, the Commission was not required to deny the petitions because of asserted defects in notice to a few tenants not shown to be contesting the petitions (Issue V). As to each of these issues, petitioners could not reasonably expect to obtain reversal of the Commission's order.

In light of the supplemental motion for attorney's fees and supporting documentation filed by the housing provider, it shall be awarded attorney's fees in the amount of $1100.

*So ordered.*

Before ROGERS, Chief Judge; FERREN, *TERRY, STEADMAN, SCHWELB, *FARRELL, WAGNER, KING, and SULLIVAN, Associate Judges; *BELSON, Senior Judge.

### ORDER ON PETITION FOR REHEARING

PER CURIAM.

On consideration of petitioners' petition for rehearing and rehearing en banc, the response and opposition thereto, intervenor's motion for leave to file reply to the response by the respondent, the lodged reply, and the opposition thereto, it is

---

11. In *Miller Brewing Co. v. Brewery Workers Local 9,* 739 F.2d 1159 (7th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985), for example, the court reasoned:

> The company's resistance to the arbitrator's finding that it violated the preference clause may have been frivolous; but we doubt whether it would be worthwhile, at least as a general rule, to divide a suitor's claims (or defenses) into frivolous and nonfrivolous, and award attorney's fees in respect to frivolous claims but not the others. The added burden to the court of making this determination would often outweigh the benefit to the party of obtaining a partial award of attorney's fees. Although it is costly to defend against a frivolous suit, the marginal costs of knocking out the frivolous claims in a suit that has a meritorious core usually are not great.

*Id.* at 1168.

ORDERED by the merits division that the petition for rehearing is denied with the exception that the final paragraph of this court's opinion as previously issued on January 24, 1992, is deleted and replaced by the following two paragraphs:

It is FURTHER ORDERED that intervenor's motion for leave to file reply to response is granted and the Clerk is directed to file the lodged reply of intervenor to the response filed by the respondent; and it appearing that the majority of the judges of this court has voted to deny the petition for rehearing en banc, it is

FURTHER ORDERED that the petition for rehearing en banc is denied.

Statement per Chief Judge ROGERS:

I vote to grant the petition for rehearing en banc under Rule 40(e). Judge Ferren's statement points out the significance of the issue. The District of Columbia's response to the petition for rehearing en banc also indicates the important theoretical and practical implications of adopting the divisions's analytical framework and suggests why a different analysis is preferable.

Statement per Associate Judge FERREN:

I vote to rehear this case en banc: This is a case of exceptional importance. D.C.App.R. 40(e). A division of this court has awarded statutory attorney's fees to a landlord, not because the tenant's unsuccessful appeal as a whole is frivolous, but because three of eight contentions on appeal are frivolous. Under the circumstances, that is radical stuff! Rehearing en banc is required because the division, in so ruling, has misapplied the Supreme Court authority on which it relies and undermined the purposes of the attorney's fee provision in the District of Columbia Rental Housing Act of 1985. D.C.Code § 45–2592 (1990) (D.C.Law 6–10, § 902).

### I.

In this case, the housing provider filed with the Rental Housing Commission "capital improvement petitions for rent ceiling increases in three buildings that form part of a complex known as Columbia Plaza in Northwest Washington, D.C." *Tenants of 500 23rd St., N.W. v. District of Columbia Rental Hous. Comm'n,* 585 A.2d 1330, 1331 (D.C.1991) (*Tenants I*). A group of tenants—the petitioners here—contested these petitions. The tenants prevailed before the Rent Administrator. The Commission reversed and remanded. The tenants prevailed again. The Commission reversed again, ruling "as a matter of law that the housing provider had satisfied the immediate necessity requirement of [D.C.Code] § 45–2520(g)." *Id.* The housing provider, as the ultimately prevailing party, asked the Commission to award attorney's fees under D.C.Code § 45–2592. The Commission declined to do so. *Tenants of 500 23rd St., N.W. v. District of Columbia Rental Hous. Comm'n,* 617 A.2d 486 (D.C. 1992) (*Tenants II*), 617 A.2d at 487 n. 6. The tenants then filed a petition for review by this court, presenting eight of the eleven contentions it had argued before the Commission. This court addressed four of them in a substantial published opinion and affirmed. *See Tenants I.* The housing provider sought attorney's fees in this court under § 45–2592 for successfully defending the appeal. In *Tenants II,* this court found the four contentions it had not addressed in *Tenants I* "groundless" and allowed the housing provider to submit a revised request for attorney's fees attributable to defending those four contentions. *Id.,* 617 A.2d at 491. On petition for rehearing, the court revised its thinking, found only three of the tenant's original eight contentions groundless, and ordered the tenants to pay the housing provider $1,100 for attorney's fees.

### II.

The division purports to honor our previous decisions which make clear that "the purposes of the attorney's fee provision are

to encourage tenants to enforce their own rights, in effect acting as private attorneys general, and to encourage attorneys to accept cases brought under the Rental Housing Act of 1985." *Ungar v. District of Columbia Rental Housing Comm'n*, 535 A.2d 887, 892 (D.C.1987). *Tenants II*, 617 A.2d at 488. The division also purports to adopt and apply *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), as announcing the standard best suited for discerning when a prevailing housing provider (landlord) is entitled to defensive attorney's fees from a losing tenant, *i.e.*, when the tenant's litigation under the Act has been "frivolous, unreasonable, or groundless" or the tenant "continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422, 98 S.Ct. at 701. In my judgment, however, the result here, by distorting and misapplying *Christiansburg*, will undermine *Ungar*-encouraged exercise of tenants' rights.

The division concedes "it is not possible for us to say that [the tenants'] appeal taken as a whole was frivolous, unreasonable, or groundless." *Tenants II*, 617 A.2d at 490. Moreover, the division notes that the Rental Housing Commission itself, having authority to award attorney's fees to a housing provider when warranted, declined to do so in this case, apparently finding none of the tenants' contentions frivolous. (Recall that the Rent Administrator had twice ruled in the tenants' favor.) *Id.*, 617 A.2d at 487 n. 6. The division also acknowledges the "general rule" that, in considering statutory fee-shifting, reviewing courts should be "hesitant to impose a re-

quirement on the lower courts and litigants which would lead to the need to distinguish between frivolous and nonfrivolous claims in every case." *Id.*, 617 A.2d at 490–491 (quoting *Hamer v. County of Lake*, 819 F.2d 1362, 1369 (7th Cir.1987), *cert. denied*, 493 U.S. 849, 110 S.Ct. 146, 107 L.Ed.2d 104 (1989)). *See Hill v. Norfolk and Western Ry. Co.*, 814 F.2d 1192, 1200 (7th Cir.1987); *Quiros v. Hernandez Colon*, 800 F.2d 1, 2 (1st Cir.1986); *Miller Brewing Co. v. Brewery Workers Local Union No. 9, AFL–CIO*, 739 F.2d 1159, 1168 (7th Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926.[1] Finally, the division cited the standard exception to the general rule against evaluating frivolousness claim by claim: "a litigant will not 'ward off' fees 'by the happenstance of including one colorable (though losing) claim amidst an ocean of frivolous ones.'" *Tenants II*, 617 A.2d at 491 (quoting *Hamer*, 819 F.2d at 1369 (quoting *Hill*, 814 F.2d at 1200)).[2]

In the end, however, concluding that three of the tenants' eight contentions were groundless, the division awarded the housing provider $1,100 in attorneys' fees—without adequately explaining why it abandoned the general rule and its limited exception, and without explaining at all how that figure was derived (appellate court fact finding?) or even documenting whether the tenants had a realistic opportunity to contest that particular calculation.

The division, therefore, has rejected the general rule against parsing litigation piece-by-piece for purposes of deciding whether to award a prevailing landlord de-

---

1. In *Miller Brewing*, the court declined to award attorney's fees, stating:

   The company's resistance to the arbitrator's finding that it violated the preference clause may have been frivolous; but we doubt whether it would be worthwhile, at least as a general rule, to divide a suitor's claims (or defenses) into frivolous and nonfrivolous, and award attorney's fees in respect to frivolous claims but not the others. The added burden to the court of making this determination would often outweigh the benefit to the party of obtaining a partial award of attorney's fees. Although it is costly to defend against a frivolous suit, the marginal costs of knocking out

   the frivolous claims in a suit that has a meritorious core usually are not great.
   739 F.2d at 1168.

2. Arguably, this is not really an "exception," for an "ocean of frivolous" issues presumably would mean the appeal, overall, is frivolous. In *Hamer* itself, a "civil rights action for review of state tax assessment procedures," 819 F.2d at 1363, the court awarded fees to the prevailing defendants because, on appeal, the plaintiffs "were only able to identify two procedural issues of any possible merit.... [T]hese issues were essentially lost among thirty-four pages of allegations raised in their complaint...." *Id.*, 819 F.2d at 1370.

fensive attorneys' fees on appeal. Instead, the division has established a new standard: a tenant should pay the landlord's attorney's fees if the tenant continues "to litigate a claim after its lack of merit should have been apparent" once the Commission had ruled. *Tenants II*, 617 A.2d at 491. This new standard apparently is derived from *Christiansburg's* warning that defensive fees may be awarded if the losing party has "continued to litigate" after the action "clearly became" groundless. 434 U.S. at 422, 98 S.Ct. at 700. But in light of *Hamer* and other cases, the "continue to litigate" criterion, as I see it, generally applies to each claim taken as a whole, not to each contention raised in support of each claim. The division, in translating *Christiansburg* for use in evaluating frivolousness on appeal, ignores *Hamer's* caution against the latter approach.

### III.

In order to understand *Christiansburg*, it is important, first, to underscore why, under a statute encouraging tenants to litigate their rights as private attorneys general, a court ordinarily should not award attorney's fees against a tenant, in favor of a prevailing landlord, unless the tenant's cause is altogether frivolous.

In *Hamer*, the court cautioned against using *Christiansburg* to chill zealous advocacy of civil rights:

> The *Christiansburg* test is intended to strike a balance between the need to eliminate the possible "chilling effect" on civil rights plaintiffs, who may decide not to pursue a meritorious suit for fear of suffering a fee award, and the goal of deterring plaintiffs from filing frivolous

claims. . . . Under the circumstances, the Supreme Court's instructions with respect to this issue bear repeating:

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.

*Christiansburg*, 434 U.S. at 421–22, 98 S.Ct. at 700. For the benefit of the district courts, we would only add that their effort to control the amount of frivolous litigation must not lose sight of the dictates of Congress which call for an aggressive and creative attack by civil rights plaintiffs, the "private attorney generals," to vigorously pursue enforcement of our civil rights laws. *Id.* at 416, 98 S.Ct. at 697. It is often through vigorous advocacy that changes and developments in the law occur and new precedent is created. *Innovative, even persistent advocacy in the face of great adversity must not be unreasonably penalized with hindsight.*

819 F.2d at 1366–67 (emphasis added).[3] We have recognized that the Council of the District of Columbia intended that tenants have the same incentive to assert their rights under the Rental Housing Acts, through potential attorney's fee awards, as claimants have under federal civil rights statutes. *See Hampton Courts Tenants' Ass'n v. District of Columbia Rental Hous. Comm'n*, 573 A.2d 10, 12, 13 (D.C. 1990); *Ungar*, 535 A.2d at 892.[4]

---

**3.** *See also* Thomas D. Rowe, Jr., *Predicting the Effects of Attorney Fee Shifting*, 47 LAW & CONTEMP. PROBS. 139, 153 (1984):

> [T]wo-way fee shifting may do its job of discouraging nuisance litigation too well, or at least have disincentive effects beyond weak cases that should be discouraged. . . . The mechanism is simply that, given risk aversion and the diminishing marginal utility of income and wealth, the threat of having to pay the other side's fee can loom so large in the mind of a person without considerable disposable assets that it deters the pursuit of even a

> fairly promising and substantial claim or defense.
>
>      \*    \*    \*    \*    \*    \*
>
> [O]n balance, it seems highly likely to discourage pressing of claims and defenses by those of modest means.

**4.** I am not arguing that this particular case has the degree of public interest normally associated with civil rights litigation, but much of the litigation under the Rental Housing Act of 1985 involves tenants of modest financial means who must count on finding attorneys willing to help

The question, then, is how to apply the "more stringent standards," *Hamer*, 819 F.2d at 1366, under *Christiansburg* to determine whether a prevailing defendant landlord is entitled to attorney's fees from the plaintiff tenant because the "claim was frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422, 98 S.Ct. at 701.

It is important to note that, in *Christiansburg*, the Supreme Court referred to a frivolous "claim." That term has a defined meaning in attorney's fee litigation. In announcing how a prevailing plaintiff's statutory attorney's fee award should be computed under federal civil rights statutes, the Court has distinguished between "claims" (or defenses), on the one hand, and "contentions" or "grounds" or "issues", on the other. *See Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983). This is a distinction of determinative importance which the division in *Tenants II* has completely overlooked.

If, for example, a plaintiff, in one lawsuit, alleges three claims or counts and prevails on one, then the plaintiff is entitled to statutory attorney's fees for only one claim or count because, presumably, the time spent in developing and arguing the other two was unrelated to—and thus altogether separate from—the first, prevailing claim. In contrast, if a plaintiff brings a single claim, supported by seven contentions, and prevails on the claim because of one of the contentions and none of the others, the plaintiff shall be entitled to a reasonable fee for the lawsuit (claim) taken as a whole, rather than to only one-seventh of that amount. The result as such—prevailing on the entire claim—dictates the fee rather than the fortuity of how many (or few) contentions the court accepts (or reaches). *See Hensley*, 461 U.S. at 434–435, 103 S.Ct. at 1939–1940. As the Court explained:

them by relying on the attorney's fee provision. It is in this sense that the statute has a civil

In some cases a plaintiff may present in one lawsuit distinctly *different claims* for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants—often an institution and its officers, as in this case—counsel's work on one claim will be unrelated to his [or her] work on another claim.... The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.

... Many civil rights cases will present only a *single claim*. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims....

... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every *contention* raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain *grounds* is not a sufficient reason for reducing a fee. The result is what matters.

*Id.* (citations and footnotes omitted) (emphasis added). The Court added in a footnote: "We agree with the District Court's rejection of 'a mathematical approach comparing the total number of *issues* in the case with those actually prevailed upon.' Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Id.* at 435 n. 11, 103 S.Ct. at 1940 n. 11 (citation omitted) (emphasis added). In short, attorney's fees are generally awardable to a prevailing plaintiff on a per "claim" basis, unless several claims are so interrelated that they are

rights fee-shifting gloss.

better evaluated for purposes of attorney time as one large claim. The litigation is not sorted more finely into "issues" or "contentions" or "grounds" for fee-award purposes.

The Court also recognized in *Hensley*, in discussing a plaintiff's failure to prevail on one among several "unrelated claims," that the defendant may be entitled to attorney's fees: "If the unsuccessful claim is frivolous, the defendant may receive attorney's fees incurred in responding to it." *Id.* at 435 n. 10, 103 S.Ct. at 1940 n. 10. Note again that the Court was referring to a frivolous "claim" taken as a whole. The court did not also say that an attorney's fee for a prevailing defense against a frivolous claim should be discounted if the court found (1) frivolous, some of the contentions in support of the defense or (2) non-frivolous, some of the contentions in support of the frivolous claim. What is important for evaluating whether to award a fee is the claim—frivolous or nonfrivolous?—not the number of frivolous or nonfrivolous contentions offered to support it.

This analysis of fees awardable for a prevailing claim or defense suggests what the result should be in *Tenants II*. The distinction between a "claim" or "defense," on the one hand, and a "contention" or "ground" or "issue," on the other, is crucial here. In this case, the housing provider filed capital improvement petitions (each comprising a claim); the tenants intervened before the Commission and filed an opposition to each (the defense), with eleven contentions against each claim. Ultimately, the housing provider prevailed, although the Commission awarded no attorney's fees against the tenants. On appeal to this court, the tenants renewed their "defense" in the form of a "petition for review" (or appellate claim). This did not prevail, but, on balance—as the division concedes—the appellate claim, taken as a whole, was not frivolous. Just as awardable attorney's fees for a prevailing defense against a *frivolous* appellate claim (taken as a whole) should not be discounted for frivolous defense contentions or for nonfrivolous appel-

lant's contentions, I do not believe attorney's fees should be awarded for a prevailing defense against a *nonfrivolous* appellate claim (taken as a whole) simply because of a few frivolous contentions in support of that overall nonfrivolous claim. The test for awarding fees, as indicated earlier, is whether an appellate claim itself is frivolous in its entirety or, at best, includes a " 'colorable (though losing) claim amidst an ocean of frivolous ones.' " *Hamer*, 819 F.2d at 1369 (quoting *Hill*, 814 F.2d at 1200 (attorney's fees awarded to appellee under Fed.R.App.P. 38 because appeal "was a complete loser, and most of the grounds for appeal were patently groundless")); *see Granado v. Commissioner of Internal Revenue*, 792 F.2d 91, 94 (7th Cir.1986) (attorney's fees awarded to government under Fed.R.App.P. 38 when there was only one nonfrivolous argument and 22 of 24 pages of opening brief were devoted to frivolous arguments on appeal of assessment of civil fraud penalties).

It is interesting to note that, in the cases stating the general rule that bases an award of attorney's fees on whether the claim or appeal is frivolous overall, not piece-by-piece, the courts have not paid attention to the *Hensley* distinction between a "claim" and a "contention." In *Hamer*, *Hill*, *Quiros*, and *Miller Brewery*, for example, the courts warned against distinguishing "between frivolous and nonfrivolous *claims* in every case." *Hamer*, 819 F.2d at 1369 (emphasis added). Clearly, however, footnote 10 in *Hensley* authorizes attorney's fee awards for prevailing defendants on a per frivolous "claim" basis (unless the claims are interrelated and should be evaluated as one). 461 U.S. at 435 n. 10, 103 S.Ct. at 1940 n. 10. *Christiansburg's* language is similar. 434 U.S. at 422, 98 S.Ct. at 700. In any event, *Hensley* and *Christiansburg* imply that the fee award for a prevailing defense generally should be based on no less than a frivolous claim as a whole. An award should not be ordered merely for frivolous "contentions" or "issues" or "grounds" argued under a losing, though not overall frivolous, claim.[5]

---

5. In its response to the petition for rehearing,       the District of Columbia acknowledges that "the

There may be instances, nonetheless, in which a frivolous appellate contention is so discrete and, though frivolous, consumes so much court and attorney time, that attorney's fees should be awarded for the appellate defense of that contention as such, among the many. *See District No. 8, International Ass'n of Machinists and Aerospace Workers, AFL–CIO v. Clearing, A Div. of U.S. Indus.*, 807 F.2d 618, 622–623 (7th Cir.1986) (appeal of contract formation issue frivolous because it would require appellate reversal of district court's credibility findings). Such a situation would be similar to one in which a plaintiff files in the same complaint a frivolous claim among several that are not. *See Hensley*, 461 U.S. at 434–435, 103 S.Ct. at 1939–1940.

There is no indication in *Tenants II* that we have a case here, such as *District No. 8*, that would permit contention-specific, rather than claim specific, attorney's fees under certain circumstances.[6] But even if this were such a case, the en banc court should provide an analysis that carefully makes clear why a contention-specific fee award is appropriate, rather than simply accepting the rule implied without analysis by the division: that *each* frivolous contention on appeal,—even though the appellate claim overall is not frivolous—presents a case for some awardable attorney's fees to a prevailing housing provider under the Rental Housing Act of 1985, contrary to virtually all judicial authority.

According to one commentator, there are four justifications for requiring one party in a dispute to pay the legal expenses of another: "to make a prevailing party whole, to encourage certain types of litigation, to punish certain types of parties, and to provide financial assistance to the prevailing party or his [or her] attorneys." Marshall J. Breger, *Compensation For-*

*mulas for Court Awarded Attorney Fees*, 47 LAW & CONTEMP. PROBS. 249, 250 (1984). The division has acknowledged the "encouragement" justification under the Rental Housing Act of 1985 but has announced a rule, in reality, that favors the "punitive" approach, punishing tenants who have contested the landlord's capital improvement petitions with an appellate claim the division concedes is not, taken as a whole, frivolous.

## IV.

In summary, there are several reasons why this case of first impression should receive en banc review:

1. This is the first court, as far as I can tell, to apply *Christiansburg* automatically, contention-by-contention, rather than claim-by-claim, despite substantial, compelling authority—including Supreme Court authority in *Hensley*—to the contrary. If we are going to take a new path, ill-advised as I believe it would be, the full court should take responsibility for doing so.

2. The decision is likely to have a devastating impact on tenant-landlord litigation—an impact the Council of the District of Columbia did not intend. Many tenants are poor. The threat of having to pay some of the landlords' attorneys' fees—if the tenants' counsel guess wrong about how many contentions to raise—will deter their bringing actions against their landlords, contrary to the "private attorney general" policy of D.C.Code § 45–2592. Indeed, in this very case, the tenant-petitioners dropped on appeal three of the contentions they had raised before the Commission; their counsel did the "winnowing of issues at the appellate level," *Tenants II*, 617 A.2d at 491, the division has asked for. But tenants and their counsel are now subject to a radical revision of general fee-

---

Division may wish to modify its opinion to reserve the shifting of fees under § 902 [D.C.Code § 2592] (and by extension, under [D.C.App.] Rule 38) for especially egregious conduct. Fee litigation should not consume this Court's time simply because a groundless argument was interspersed among others that could not be characterized as frivolous."

6. In contrast, if for example, the housing provider had filed a petition for two rent ceiling increases, one for capital improvements and the other based on hardship—and, overall, the tenant's opposition to one was frivolous but to the other was non-frivolous—fees would be awardable against the tenant for one but not the other.

shifting principles constructed by only three (out of nine active and seven senior) judges who have ruled, with the benefit of hindsight, that the appeal was not finely enough tuned.[7]

3. The Commission could be influenced by the division's opinion to adopt as its own policy the contention-by-contention approach under the rule announced by the division. Then the Commission could order a tenant to pay the landlord's attorney's fees—at the Commission level—simply because the tenant made too many arguments in the first instance. In this way, the possibility for aggressive, creative lawyering on behalf of tenants' rights under a complex statute could be seriously threatened.

4. The division premises its warning that tenants and counsel should not continue to litigate frivolous contentions on an assumption that airing an argument before the Commission itself will necessarily reveal when the argument is frivolous. This is dangerous thinking. The number of times this court reverses an administrative agency ruling—even when according proper deference to agency expertise—should remind us all that this court, not the agency, has the last word. For this reason alone, this court should be very reluctant to say a tenant should not have approached the court with a contention concerning statutory rights that only the Commission, not this court, has addressed.

5. The decision will have an obvious, major impact on the interpretation of other attorneys' fees statutes in the District of Columbia.

6. If contentions are frivolous, this court can—and does—deal with them summarily. Little time is wasted. If the court is conscientious, probably more time for appellate review will be spent evaluating "groundlessness" for attorney's fee purposes than on the substantive contention itself. Furthermore, because the same contentions presumably will have been raised

before the Commission, the housing provider's counsel will have to spend little extra effort and expense punching a word processor button to print out a previously-written argument for use in the appellate brief. On balance, therefore, it appears to me that the division's opinion necessitating that future parties litigate the issue of "groundlessness," contention-by-contention, will be more costly to everyone concerned than our existing practice of dealing summarily with the merits of each allegedly groundless argument itself.

\* \* \*

After almost fifteen years on this court, I can recount instance after instance where one of my colleagues or I have been intrigued and concerned about issues other colleagues have deemed frivolous. That is why at least three (and sometimes nine or more) judges sit on appeals; we often see cases differently. I have also experienced conscientious counsel suggesting a priority for issues at oral argument, only to find the court wishes to proceed first with what counsel believes to be a lesser issue. Sometimes counsel have it right. Especially as to complex statutes, counsel may have more experience than judges and, having studied the area of law recently and carefully, are in a position to suggest important issues and implications that the courts should take more seriously. We should not be too quick to disparage a particular contention.

This is not to say litigation is never frivolous. Sometimes it is. But if an appeal overall is not frivolous—as the division says this one is not—I believe it is presumptuous to nitpick that appeal in the way the division favors. The costs in time and energy will far outweigh the benefits to anyone. And the costs to tenants generally from the threat this case hangs over their heads will, I predict, be serious.

It is a shame that the full court has blinked at these realities and let the decision stand unexamined. This is the kind of

---

7. Of course, the division judges themselves, with the benefit of a rehearing petition, have conceded they too quickly found a contention groundless the first time around. *See supra*

Part I. It would be interesting to see how all nine active judges would come out in this case if the division's new test ultimately were to survive.

case, with an enormous potential impact, that all nine active judges are supposed to address under Rule 40(e).