**In re Eva LANGON, Appellant.**

**No. 93–PR–1417.**

District of Columbia Court of Appeals.

Submitted June 15, 1995.
Decided Aug. 28, 1995.

---

the court had appointed to care for and manage the affairs of her mother, Eva Langon.[1] Finding no abuse of discretion, we affirm.

This case began when Patricia Langon petitioned to be appointed the guardian and conservator of her mother, Eva Langon. Patricia Langon filed the petition on February 13, 1991. The court appointed a guardian ad litem for Eva Langon and an examiner, who thereafter filed reports with the court. The trial court held a hearing on April 12, 1991, after which the court apparently appointed as guardians[2] two of Eva Langon's adult children, Willexton Langon and Dianne Tyler, and also appointed Kathryn Pierson, Esquire, as conservator.[3]

Patricia Langon did not appeal the April 12, 1991 decision. Instead, over the course of the next two years, she filed four successive petitions requesting that the court remove Willexton Langon and Tyler as guardians and Pierson as conservator. It is from the denial of the last of those petitions that this appeal is taken. *See* note 1, *supra.*

The proceeding in this case is governed by the District of Columbia Guardianship, Protective Proceedings, and Durable Power of Attorney Act of 1986, D.C.Code §§ 21–2001 to –2085 (1989 & Supp.1995). Proceedings under the Act are collectively referred to as "intervention proceedings." D.C.Code § 21–2011(12). A proceeding to appoint a conservator is called a "protective proceeding." D.C.Code § 21–2011(23). Under the Act, the court may, upon petition, appoint a guardian and conservator for an "incapacitated individual." D.C.Code §§ 21–2041(a), –2044(b), –2051(a), –2055(b). An incapacitated individual is

an adult whose ability to receive and evaluate information effectively or to communicate decisions is impaired to such an extent

Patricia Langon, filed a brief pro se.

Willexton M. Langon and Dianne E. Tyler, filed a brief pro se.

Before FARRELL and RUIZ, Associate Judges, and GALLAGHER, Senior Judge.

RUIZ, Associate Judge:

Appellant, Patricia Langon, attacks the trial court's October 5, 1993 denial of her petition to remove the guardians and conservator

1. In her brief, Patricia Langon also appears to challenge the trial court's earlier decisions to appoint those guardians and the conservator, as well as denials of previous petitions to remove them. Those decisions were made far before the thirty days allowed for appeal by D.C.App.R. 4. Therefore, the only order properly before us is the October 5, 1993 order denying Patricia Langon's August 30, 1993 petition.

2. A guardian is responsible for the care, custody and control of an "incapacitated individual," who is called a "ward." D.C.Code § 21–2047.

3. A conservator is responsible for managing the estate of an "incapacitated individual," who is in that relationship called a "protected individual." D.C.Code §§ 21–2011(3), (22), –2070, –2071.

that he or she lacks the capacity to manage all or some of his or her financial resources or to meet all or some essential requirements for his or her physical health, safety, habilitation, or therapeutic needs without court-ordered assistance or the appointment of a guardian or conservator. D.C.Code § 21–2011(11).

Once appointed, the court *"may* remove a guardian if removal is in the *best interest* of the ward," upon petition of the ward or any person interested in the welfare of the ward. D.C.Code § 21–2049(a) (emphasis added). The court also *"may* remove a conservator for *good cause,"* D.C.Code § 21–2061 (emphasis added), upon petition of a person interested in the welfare of the protected individual. D.C.Code § 21–2062(a).

 We have not previously decided the appropriate standard of review for orders concerning petitions to remove a guardian or conservator. It appears the provisions manifest a legislative intent to confer upon the trial court considerable discretion in deciding whether a guardian should be removed or a conservator replaced. Use of the word "may" in a statute ordinarily denotes discretion. *Thompson v. Clifford,* 132 U.S.App. D.C. 351, 355, 408 F.2d 154, 158 (1968); *see also DeSipio v. DeSipio,* 186 A.2d 624, 626 (D.C.1962). Although in the final analysis, the meaning of the word "may" in a particular statute " 'depends on the context of the statute, and on whether it is fairly to be presumed that it was the intention of the legislature to confer a discretionary power or to impose an imperative duty,' " *Thompson, supra,* 132 U.S.App.D.C. at 355, 408 F.2d at 158 (quoting *United States ex rel. Siegel v. Thoman,* 156 U.S. 353, 359, 15 S.Ct. 378, 39 L.Ed. 450 (1895)), in the present context, there is no reason to suppose that the legislature thought an appellate court better qualified than a trial judge to make the "best interest" and "good cause" determinations called for by the statute.

The statute specifically provides that unless inconsistent, "the principles of law and equity supplement its provisions." D.C.Code § 21–2002(a). The Act also provides that unless they conflict with its provisions, existing rules of trial and appellate practice are to apply to intervention proceedings. D.C.Code §§ 21–2022, –2024. In *Johnson v. United States,* 398 A.2d 354, 362 (D.C.1979), we explained that "[m]atters are committed to the discretion of the trial court and reviewed only for abuse of that discretion to reap the benefits of certain perspectival and institutional advantages." Those advantages include the trial court's "superior opportunity to get the feel of the case" and the need to entrust to the judgment of the trial court those questions which turn on subtle distinctions and resist treatment by application of general rules. *Id.* (internal quotations omitted). We also observed that in such circumstances, review for abuse of discretion promotes finality of decisions, in that "[k]nowing that the appellate court will not indulge in close scrutiny of the minutiae surrounding the trial court's exercise of judgment, parties to that determination may be less apt to seek to disturb it." *Id.* at 362–63. We particularly noted that intra-family disputes are likely to involve questions appropriately reviewed for abuse of discretion. *Id.* at 362. Hence, we review the trial court's refusal to remove Eva Langon's guardians and conservator for abuse of discretion.

The trial court did not abuse its discretion in denying Patricia Langon's petition. Although the August 30, 1993 petition is not a part of the record, it appears from the transcript of the October 5, 1993 hearing that the petition was based on Patricia Langon's allegations that Eva Langon was not being adequately cared for by Patricia Langon's sister and Eva Langon's daughter, Willetta Langon, with whom Eva Langon had been living since before the intervention proceeding began. Specifically, Patricia Langon contended that Willetta Langon had a history of violent outbursts and that Eva Langon had expressed a desire to return to the house that Eva Langon owned and in which Patricia Langon was living.

Those contentions appear to be identical to the allegations Patricia Langon had made in connection with the initial petition and the other petitions for removal she had filed, denial of which she had not challenged on appeal. Therefore, the trial court could have denied the petition on the ground that it

presented no claim of changed circumstances warranting a different disposition.

The trial court did not rely solely on its previous decision, however. The court appointed a visitor, pursuant to D.C.Code § 21–2033,[4] who filed a comprehensive report recommending that the petition be denied. The report detailed the visitor's interviews with Eva Langon, with her co-guardians, Tyler and Willexton Langon, with Willetta Langon and her housemate, with the caregiver hired by the guardians, with Patricia Langon, and with the conservator, Pierson. She also visited both Willetta Langon's house, where Eva Langon was living, and Eva Langon's house, where Patricia Langon was living.

■ At the October 5 hearing, only Patricia Langon and the visitor appeared.[5] Apart from injecting hearsay and speculation, Patricia Langon's testimony merely repeated her contentions that Eva Langon had told her that she wanted to live with her and that Willetta Langon had on one occasion pushed Patricia Langon to the ground. The visitor reported that during a private interview, she asked Eva Langon in several different ways where she wanted to live, and that each time she responded that she wanted to stay where she was. At the conclusion of the hearing, the trial court ruled that the status quo should be maintained and Patricia Langon's petition denied.

Thus, the trial court recognized that it had discretion and took steps to inform itself of the facts relevant to exercising its discretion. *See Johnson, supra,* 398 A.2d at 363–64. In view of the thorough and considered report of the visitor and the scanty basis for Patricia Langon's petition, the trial court's adherence to the recommendations of the visitor was well within "the range of permissible alternatives." *Id.* at 365. Therefore, we cannot say that the trial court abused its discretion.

*Affirmed.*

---

4. *See also* D.C.Code §§ 21–2041(d), (e), –2054(a), (b) (authorizing use of visitors in proceedings on petitions for appointment of guardians and conservators).

5. Patricia Langon contends that the trial court erred in not ensuring that Eva Langon was present. In connection with *original* proceedings to determine incapacity and appoint a guardian or conservator, the statute does mandate certain protections for the incapacitated individual, including the individual's presence at the hearing unless good cause is shown. D.C.Code §§ 21–2041(h), –2054(e). The statute also specifically provides that the same protections shall apply when a proceeding to terminate the guardianship or conservatorship is brought by the ward or protected individual, or when a successor guardian is to be appointed. D.C.Code §§ 21–2049(b), (c), –2075. There is no such requirement with respect to a petition merely to remove an existing guardian or conservator, however.

In the present case, although Patricia Langon asked to be appointed successor guardian, the trial court never reached that issue because it declined to remove the present guardians. Because the hearing addressed only the issue of whether Eva Langon's guardians and conservator should be removed, and not the appointment of a successor guardian, Eva Langon's presence was not required by the statute. Moreover, the trial court had before it the report of the visitor who had spoken with Eva Langon concerning Patricia Langon's petition. Consequently, the trial court did not proceed on the petition in the absence of any knowledge concerning Eva Langon's views. In light of the foregoing, it was not error for the trial court to conduct the October 5 hearing with Eva Langon absent.