# District of Columbia
# Court of Appeals

**No. 15-CV-690**

JOHN DOE NO. 1,



F I L E D

MAR **10** 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

Appellant,

v.

**CAB-7525-12**

SUSAN L. BURKE,

Appellee.

On Appeal from the Superior Court of the District of Columbia
Civil Division

BEFORE: EASTERLY and MCLEESE, *Associate Judges*; and FARRELL, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcript of record, the briefs filed, and was argued by counsel. On consideration whereof, and as set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the judgment on appeal is reversed, and the case is remanded to the trial judge to evaluate the reasonableness of the award requested.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: March 10, 2016.

Opinion by Senior Judge Michael W. Farrell.

Opinion, concurring in part and dissenting in part, by Associate Judge Roy W. McLeese.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CV-690

JOHN DOE NO. 1, APPELLANT,

v.

SUSAN L. BURKE, APPELLEE.

FILED 3/10/16
District of Columbia
Court of Appeals

*Julio Castillo*
Julio Castillo
Clerk of Court

Appeal from the Superior Court of the
District of Columbia
(CAB-7525-12)

(Hon. Maurice A. Ross, Trial Judge)

(Argued January 14, 2016                    Decided March 10, 2016)

*Michael E. Rosman*, with whom *Christopher J. Hajec* was on the brief, for appellant.

*William T. O'Neil* for appellee.

*Arthur B. Spitzer*, American Civil Liberties Union of the Nation's Capital, and *Bruce D. Brown* and *Gregg P. Leslie*, The Reporters Committee for Freedom of the Press, filed a brief *amicus curiae* on behalf of appellant.

Before EASTERLY and MCLEESE, *Associate Judges*, and FARRELL, *Senior Judge*.

Opinion for the court by *Senior Judge* FARRELL.

Opinion by *Associate Judge* MCLEESE, concurring in part and dissenting in part, at page 24.

FARRELL, *Senior Judge*:  May an anonymous civil defendant who files and prevails on a special motion to quash a subpoena for identifying information under D.C. Code § 16-5503 (2012 Repl.), part of the District's Anti-SLAPP Act (the Act), be awarded attorney's fees under D.C. Code § 16-5504 (a) without showing that the suit prompting the subpoena was frivolous or improperly motivated?  We answer that question yes.  We further hold, after considering the language and legislative history of the Act, that a successful movant under § 16-5503 is entitled to reasonable attorney's fees in the ordinary course — *i.e.*, presumptively — unless special circumstances in the case make a fee award unjust.  Because no such circumstances exist on the record of this case, we reverse the order of the trial court denying altogether the defendant/movant's request for attorney's fees, and remand the case solely for the court to consider the reasonableness of the amount of fees requested.

## I.

### A.

The Anti-SLAPP Act, as explained in our earlier opinion, *Doe No. 1 v.*

*Burke*, 91 A.3d 1031 (D.C. 2014) (*Doe I*), was enacted by the D.C. Council to "protect the targets of . . . suits" intended "as a weapon to chill or silence speech." *Id*. at 1033.[1] One way the Act does so, "recognizing the importance of anonymous speech on matters of public interest," *id.* at 1036, is to enable an individual "'whose personal identifying information is sought' to safeguard his identity by filing a 'special motion to quash' a subpoena," *id.* (quoting D.C. Code § 16-5503 (a)), and, if successful, "avoid being named in a suit and served with a complaint." *Id*. To succeed on a special motion to quash,

> the moving party must "make[ ] a *prima facie* showing that the underlying claim arises from an act in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502 (b); *see also* D.C. Code § 16-5503 (b). Upon such a showing, the motion will be granted unless the opposing party demonstrates a likelihood of success on the merits of his or her underlying claim. *Id*.

*Doe I*, 91 A.3d at 1036 (brackets in original).[2]

---

[1] "SLAPP" stands for a "strategic lawsuit against public participation." *Doe I*, 913 A.3d at 1033.

[2] The same standards apply to a "special motion to dismiss," D.C.

(continued…)

In this case, appellee Susan L. Burke, an attorney, sued multiple anonymous defendants ("John Does 1-10") alleging defamation and other torts arising from edits made to a Wikipedia webpage established in Ms. Burke's name. John Doe 1 had allegedly added information to the page using the name Zujua. After Ms. Burke caused a subpoena to be issued to obtain Wikipedia's user data and thereby learn Zujua's (and others') identity, Zujua filed a special motion to quash the subpoena. The trial court denied the motion, but this court reversed. We held as a matter of law that Zujua had shown "that his speech is of the sort that the statute is designed to protect," *id*. at 1036, 1043-44,[3] and that Ms. Burke, who was thus

---

(…continued)
Code § 16-5502 (2012 Repl.), not at issue in this case. *Doe I*, 91 A.3d at 1036. Our analysis thus focuses on the "special motion to quash," though most of what we say applies to the former motion as well.

[3] Specifically, in editing Ms. Burke's webpage, Zujua had spoken — or "advoca[ted]" — on an "issue of public interest," namely one "related to . . . a public figure," § 16-5501 (3), because Ms. Burke is "a limited-purpose public figure" under standards applied by this court and others in the defamation context. *Doe I*, 91 A.3d at 1040-43 (concluding that Ms. Burke had assumed a visibly public position in connection with, among other things, her lawsuit against a company then known as Blackwater for injuries to civilians resulting from shootings in 2007 in Iraq). Nor, we held, was Zujua's speech "directed primarily toward protecting the speaker's commercial interests," so as to disqualify it, under another provision of § 16-5501 (3), from the protection of the special motion. *Id.* at 1043 n.16.

"required to show malice on Zujua's part . . . to succeed" in rebuttal, had failed to show a "likelihood of success on [her] underlying claims." *Id.* at 1045.

**B.**

On remand, Zujua moved to be awarded attorney's fees under D.C. Code § 16-5504 (a), which provides that "[t]he court may award a moving party who prevails, in whole or in part, on a motion brought under . . . § 16-5503 the costs of litigation, including reasonable attorney fees." In response, attorney Burke argued mainly that the trial court in its discretion ("[t]he court *may* award . . . attorney fees") should award no fees in the circumstances of the case. The trial judge agreed and denied the fee request entirely.[4] He concluded first that attorney's fees were unjustified because Ms. Burke had not filed "a classic SLAPP suit" against Zujua, one "within the meaning of the D.C. [Anti-SLAPP] statute."

---

[4] When the judge denied the fee request, Ms. Burke's suit against all of the defendants, including Zujua, was still pending. Her subsequent voluntary dismissal of the entire action removes any basis for her present, half-hearted contention that we lack jurisdiction to review the denial of the fee award. *See*, *e.g.*, *Anderson v. United States*, 754 A.2d 920, 922-23 (D.C. 2000); *see also Purcell v. Thomas*, 28 A.3d 1138, 1141 (D.C. 2011) (noting separate appealability of "judgment disposing of the merits" and "decision regarding attorney fees").

Citing legislative history corresponding to this court's recognition in *Doe I* that SLAPP suits "masquerade as ordinary lawsuits" but in reality are used "as a weapon to chill or silence speech," *Doe I*, 91 A.3d at 1033 (citation and internal quotation marks omitted), the judge found the plaintiff's suit to have none of the earmarks of such an action: It "was not based on flimsy speculation and was not intended to inflict costly litigation fees . . . as a means to stifle speech"; it could "hardly be seen as frivolous" because it "set forth a plausible argument" for believing that Zujua had acted maliciously; and "it is not unreasonable to surmise that plaintiff filed what she believed to be a meritorious suit to recover for the harm caused by the false statements made via anonymous Wikipedia edits."

The judge reasoned further that, "even if an action is construed as a SLAPP suit, attorneys' fees and costs are not automatic and may be recovered only upon a showing that a frivolous claim has been made against defendants." Exercising the discretion he understood to be afforded him by the fee provision's "permissive language," he determined that because the plaintiff's suit, although unsuccessful, had not been filed "with [the] intent to inflict costly litigation fees, bring a frivolous suit, or . . . stifle speech," attorney's fees were unjustified in light of "the equities" of the case, "the aims of the D.C. Anti-SLAPP Act and the purpose for

awarding fees," and the findings of merit (or non-frivolousness) and proper motivation the court had made regarding the underlying suit.[5]

## II.

### A.

For the trial judge, it is apparent, "a moving party who prevails" on a motion to quash under § 16-5504 may not be awarded attorney's fees, presumptively or otherwise, without consideration by the court of the merits of, and motive behind,

---

[5] As one "equity" counting against a fee award, the judge cited website indications that Zujua's attorneys, employed by an organization named the Center for Individual Rights (the Center), in general "pursue this type of litigation to further their own [institutional] self-interest and need no encouragement [through a fee award] to do so." In "protecting [Zujua's] right to anonymous free speech," which accorded with the Center's own stated "public policy positions," Zujua's "counsel ha[d] already achieved an award by succeeding in its own interest." Further counting against an award, in the judge's view, were representations the judge found undisputed that Zujua had rejected a settlement offer by plaintiff Burke "that would not require [Zujua] to reveal his identity." Both of these matters are discussed in part II. D., *infra*.

Having denied Zujua's request for attorney's fees entirely, the judge had no occasion to consider the reasonableness of the fee amount requested. See part II. E., *infra*.

the underlying lawsuit.  Only if the suit, besides having failed the test of § 16-5503 (b) ("likely to succeed on the merits"), has been determined to be frivolous or intended to stifle speech by causing undue litigation costs is it one within the "meaning" of the Act — a "classic SLAPP suit" — so as to justify the statutory shift of the obligation to pay costs including attorney's fees to the plaintiff.

The threshold defect in this statutory reading is that nowhere does the Act refer to or define a "classic" SLAPP suit, as distinct from one against which the defendant may invoke the statute's protections after a threshold *prima facie* showing.  As explained above, the burden of maintaining the suit shifts to the plaintiff once the defendant has made "a prima facie showing that the underlying claim arises from an act in furtherance of the right of advocacy on issues of public interest . . . ."  D.C. Code § 16-5503 (b).  A "claim" is defined as "*any* civil lawsuit, claim, complaint, cause of action . . . or other civil judicial pleading. . . ."  *Id.* § 16-5501 (a) (emphasis added).  Nothing in this language, or in the words of the attorney's fee provision, § 16-5504 (a), implies that to qualify for fees the anonymous defendant successful in quashing a subpoena must have resisted a SLAPP claim "classic" or exemplary in nature, rather than one arising — solely but pivotally — from the defendant's exercise of a special form of speech or

advocacy. The protections of the Act, in short, apply to lawsuits which the D.C. Council has deemed to be SLAPPs, and this court's ruling in *Doe I* that Zujua was entitled to those protections settled the question of whether attorney Burke's suit fit within the statutory meaning.

More important, however, than this illusory distinction the trial judge saw between "classic" SLAPP suits and others is that the Act, by its terms, impliedly but clearly rejects the additional showing of frivolousness or wrongful motivation the judge required before a party who files a special motion to quash and prevails may recover attorney's fees. The costs provision, D.C. Code § 16-5504, provides in full:

> (a) The court may award a moving party who prevails, in whole or in part, on a motion brought under § 16-5502[6] or § 16-5503 the costs of litigation, including reasonable attorney fees.

> (b) The court may award reasonable attorney fees and costs to the responding party only if the court finds that a motion brought under § 16-5502 or § 16-5503 is frivolous or is solely intended to cause unnecessary

---

[6] See note 2, *supra*.

delay.

The distinction could hardly be clearer between when, to qualify for attorney's fees, a party must show frivolousness or improper motive in the opponent's action, and when not. Unlike the "moving party who prevails . . . on a motion," "the responding party" — the original plaintiff — may be awarded fees only if the court finds a complete lack of merit or improper motivation in the special motion to quash. This distinction between what the Council required in one of two companion provisions but not the other must be assumed to be deliberate:

> When the legislature uses a term or phrase in one . . . provision but excludes it from another, courts do not imply an intent to include the missing term in [the] . . . provision where the term or phrase is excluded. Instead, omission of the same provision from a similar section is significant to show different legislative intent for the two sections.

2A NORMAN SINGER & SHAMBIE SINGER, *Sutherland Statutes and Statutory Construction* § 46.6 (7th ed. 2015). In the same vein, the Supreme Court has stated:

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion". . . . Had Congress intended to restrict [the subsection in question to a particularly meaning], *it presumably would have done so expressly as it did in the immediately following subsection* . . . . We would not presume to ascribe this difference to a simple mistake in draftsmanship.

*Russello v. United States*, 464 U.S. 16, 23 (1983) (internal citations omitted; emphasis added).

The Act's silence in not requiring the moving party on a special motion to quash to show more than that it prevailed thus speaks eloquently as to the Council's intent regarding entitlement to reasonable attorney's fees. In departing, for example, from the traditional American Rule governing fees,[7] the Act gives no sign — as to prevailing movants — of retaining vestiges of the "bad faith

---

[7] "[T]his jurisdiction follows the American Rule under which . . . every party to a case shoulders its own attorneys' fees, and recovers from other litigants only in the presence of statutory authority, a contractual arrangement, or certain narrowly-defined common law exceptions . . . ." *Oliver T. Carr Co. v. United Techs. Commc'ns Co.*, 604 A.2d 881, 883 (D.C. 1992) (internal quotation marks omitted).

litigation" exception to that rule. *Synanon Found., Inc. v. Bernstein*, 517 A.2d 28, 37 (D.C. 1986). The Act similarly bears no resemblance in this regard to Anti-SLAPP statutes such as New York's (relied on by the trial judge) that authorize a fee-shift only where "the action involving public petition and participation was commenced or continued without a substantial basis in fact and law" (or "substantial argument" for change in law). N.Y. Civil Rights Law § 70-a (1)(a) (McKinney 2011).[8] In clear contrast to the responding party's eligibility for fees, the Act imposes no requirement on a successful movant under § 16-5504 (a) to show either of the twin facts relied on by the trial court — improper motive (bad faith) or total lack of merit in the underlying suit — before reasonable attorney's fees may be awarded.

From the text of the statute alone, therefore, we think it a fair inference that

---

[8] The trial judge cited *Rubel v. Daily News, LP*, 2010 N.Y. Misc. LEXIS 4273, at *19-20 (N.Y. Sup. Ct. Aug. 26, 2010), which read § 70-a (1)(a) to mean that "attorneys' fees and costs . . . may be recovered only upon a showing that a frivolous claim has been made against defendants . . . ." New York is one of a handful of states whose Anti-SLAPP statutes include no special motion to dismiss or quash, and accordingly condition the defendant's entitlement to attorney's fees on a showing of frivolousness (no "substantial basis in fact or law") in the underlying suit. *See also*, *e.g.*, Del. Code Ann. tit. 10, § 8138 (a)(1) (West 2015).

the D.C. Council intended the successful movant under § 16-5503 to be awarded attorney's fees in the ordinary course, *i.e.*, presumptively, on request. But the issue is not wholly without uncertainty or ambiguity because, as the trial judge emphasized, the legislature used the verb "may" to authorize the shift in fees; it did not use "shall" or "must," as it might have, and as a general rule "may" connotes latitude or choice — in a word, discretion. *See, e.g.*, *In re Langon*, 663 A.2d 1248, 1250 (D.C. 1995). We accordingly turn to the legislative history of the Act for what guidance it may furnish in resolving this ambiguity concerning the discretion § 16-5504 (a) affords the trial court.

## B.

That history begins with the Long Title to Bill 18-893, the "Anti-SLAPP Act of 2010," which defines the purpose of the legislation as including: "to provide a motion to quash attempts to seek personally identifying information; and *to award* the costs of litigation to the successful party on a special motion."[9] "[I]n

---

[9] D.C. Council, Committee on Public Safety and the Judiciary, Report on Bill 18-893 at 26 (Nov. 18, 2010) (Committee Report) (emphasis added).

determining the extent and reach of an Act of the legislature, the court should consider not only the statutory language, but also the title." *Mitchell v. United States*, 64 A.3d 154, 156 (D.C. 2013) (citation omitted). The stated purpose here indeed suggests that the Council meant for the trial court "to award" reasonable fees in the ordinary course to the defendant successful in moving to quash.

That inference gains further strength from the Committee Report accompanying Bill 18-893. In citing the threat to free expression posed by SLAPP suits "over the past two decades" and the corresponding need for local Anti-SLAPP legislation, the Committee recognized the substantial cost to defendants (named or "unnamed") of litigating SLAPP actions even equipped with the means the Bill provided — special motions to dismiss or to quash — "to move expeditiously, and equitably, to dispense [with] a SLAPP." Committee Report at 1, 4. The Committee Report therefore repeatedly pairs the "substantive rights" the Bill "extends to defendants in a SLAPP" with the authority granted the trial court to award "the costs of litigation" to "the successful party of a special motion to dismiss or . . . to quash." *Id*. at 4, 6. And in providing for both — *i.e.*, the right to pursue an early end to the litigation, and related costs to the movant successful in doing so — the Bill "closely mirrored" federal Anti-SLAPP legislation then

pending before Congress,[10] which unambiguously entitled a moving party who prevails on a special motion to reasonable attorney's fees. *Id.* at 3-4.[11] The fact that the federal bill used "shall" to convey that meaning counts for little, in our view: what matters is that the D.C. Council hewed closely to that statutory model

---

[10] H.R. 4364, the "Citizenship Participation Act of 2009," H.R. 4364, 111 Cong. (2009). H.R. 4364 was not enacted into law.

[11] The attorney's fee provision of H.R. 4364 stated, in relevant part, as follows:

> SEC. 8. FEES AND COSTS.
>
> (a) Attorney's Fees- The court shall award a moving party who prevails on a special motion to dismiss or quash the costs of litigation, including a reasonable attorney's fee.
>
> (b) Frivolous Motions and Removal- If the court finds that a special motion to dismiss, special motion to quash, or the removal of a claim under this Act is frivolous or is solely intended to cause unnecessary delay, the court may award . . . reasonable attorney's fees and costs to the responding party.

> The Committee Report also took note of the very large number of states that had enacted Anti-SLAPP laws "creat[ing] a similar special motion to dismiss." The District's Bill was "[f]ollowing the lead" of these "other jurisdictions" as well in both "extend[ing] substantive rights" and pairing them with the allowance of costs and fees to "the successful party of a special motion to dismiss or . . . quash." Committee Report at 3-4.

— and its clear distinction between the successful "moving" and "responding" parties — in crafting the District's attorney's fee provision.[12]  Nothing in the legislative history implies, by contrast, that the Council had in mind granting broad or loosely constrained discretion to the trial court to award or deny attorney's fees to a party prevailing on its special motion to quash.

## C.

In light of all we have seen, it is plain to us that D.C. Code § 16-5504 (a) contemplates a presumptive award of attorney's fees to the moving party who

---

[12]  Indeed, what may be termed "unofficial legislative history," *see Public Invest. Ltd. v. Bandeirante Corp*., 740 F.2d 1222, 1228 (D.C. Cir. 1984), not disputed by attorney Burke, suggests how close the Council was to conforming the District's fee provision exactly to federal Bill H.R. 4364.  In email correspondence before the second reading of the proposed law, the Committee Clerk of the Council's Committee on Public Safety and the Judiciary asked two attorneys who had had "great input" in the Bill before mark-up whether it should be amended to say "shall award" costs, including attorney's fees.  Arthur Spitzer of the American Civil Liberties Union replied that other federal and District laws using "may" had been construed to "make[] the fees all-but-mandatory in most cases," but that a "possible danger of using 'shall' in the Anti-SLAPP law" was that courts would take this to mean fee awards under other District fee-shift provisions were to be "less automatic," so that, in his view, "perhaps keeping 'may' would be better."  The Committee Clerk replied that "it is good to know there are valid reasons not to go that route."

prevails on a special motion to quash under § 16-5503. In treating differently for fee purposes the successful moving party (subsection (a)) and successful opponent of the motion (subsection (b)), § 16-5504 is most naturally read as patterned after existing laws that, while couching the authority to award fees in the permissive verb "may," distinguish similarly between prevailing plaintiffs and defendants, and in the ordinary case call for an award of attorney's fees to the former on request. The paradigmatic example of laws embodying that distinction are the federal Civil Rights Acts, as interpreted in *Newman v. Piggie Park Enters*., 390 U.S. 400 (1968), and *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412 (1978). Thus, whereas a prevailing plaintiff under Title II of the Civil Rights Act of 1964 "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust," *Newman*, 390 U.S. at 402, the trial court may "award attorney's fees to a prevailing defendant in a . . . case [under Title VII of the Civil Rights Act only] upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Christiansburg*, 434 U.S. at 421; *see also Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (per curiam). The parallel to D.C. Code § 16-5504 is apparent when we replace the *Newman*/*Christiansburg* distinction with the contrast between "a moving party who prevails" on a special motion and "the responding party." *Cf. Fogerty v. Fantasy, Inc.*, 510 U.S. 517,

521-22 (1994) (rejecting circuit court rule under the Copyright Act of 1976 that "prevailing plaintiffs are generally awarded attorney's fees as a matter of course," in part because "[t]he statutory language . . . gives no hint that successful plaintiffs are to be treated differently from successful defendants").

Furthermore, although the *Newman*/*Christiansburg* distinction favoring prevailing plaintiffs rests on what the Supreme Court "found to be the important policy objectives of the Civil Rights statutes," *id.* at 523, it would be wrong to slight the policy concerns similarly underlying the Anti-SLAPP Act's provision for a special motion to quash and the corresponding fee distinction favoring successful movants. "The right the Council sought to protect with the special motion to quash," we stated in *Doe I, supra*, "is the right to engage in anonymous speech," a "constitutional right" underscoring the "substantial public interest" the Council saw in protecting "the intended targets of SLAPP actions." 91 A.3d at 1039 (internal quotation marks omitted); *see also* Committee Report, *supra* note 9, at 1, 3 (pointing to the "chilling effect [of SLAPP suits] on the exercise of constitutionally protected rights," particularly speech involving "the kind of grassroots activism that should be hailed in our democracy"). While it is too much to equate the successful movant under D.C. Code § 16-5503 with the prevailing

Civil Rights Act plaintiff, "the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority," *Christiansburg*, 434 U.S. at 418 (internal quotation marks omitted), still the Council's concern to protect SLAPP targets "engag[ed] in political or public policy debates," Committee Report at 4, by special motions and related reimbursement for litigation costs strongly suggests its intent to define the court's discretion as to fee awards in the same way as do federal laws protecting basic rights.[13]

In *Tenants of 500 23rd Street, N.W. v. District of Columbia Rental Hous. Comm'n*, 617 A.2d 486 (D.C. 1992), this court read the attorney's fee provision of the District's Rental Housing Act to embody the *Newman*/*Christiansburg* distinction, and "as entitling prevailing tenants to a presumptive award of attorney's fees." *Id*. at 488 (citing *Newman*, 390 U.S. at 402). We now read D.C.

---

[13] An *un*successful motion to quash under § 16-5503, by contrast, does not implicate the strong protective concerns underlying the special motion: the defendant's speech will not have been shown to "arise[] from an act in furtherance of the right of advocacy on issues of public interest," or the plaintiff will have shown a likelihood that the speech was "malicious," so as to largely trump First Amendment concerns. D.C. Code § 16-5502 (b). That is why, contrary to Judge McLeese's view, *post* at 36, it is not "counterintuitive" for the statute to deny a presumptive fee award to the defendant forced to litigate to verdict or even summary judgment before prevailing.

Code § 16-5504 (a) in similar fashion: it entitles the moving party who prevails on a special motion to quash to a presumptive award of reasonable attorney's fees on request, "unless special circumstances would render such an award unjust." *Christiansburg*, 434 U.S. at 416-17.

### D.

No such circumstances disqualifying Zujua from an award of reasonable fees appear on the record of this case. Appellant Burke cites, presumably as one such circumstance, the trial judge's determination that Zujua's attorneys are employed by a public interest organization that, judging from its website-stated mission, "already achieved an award by succeeding in its own interest" through having "protect[ed Zujua's] right to anonymous free speech." See note 5, *supra*. But § 16-5504 (a) provides for an award of fees to the "moving *party* who prevails" (emphasis added), not to a party's counsel. *See Evans v. Jeff D.*, 475 U.S. 717, 730-32 (1986) (analyzing similar statutory language as demonstrating that the legislature had not "bestowed fee awards upon attorneys," but on the "prevailing *party*") (emphasis in original). Nor is it material that Zujua's attorneys (the Center) represented him *pro bono* before requesting fees on his behalf. *See*

*Blum v. Stenson*, 465 U.S. 886, 894 (1984) (holding that "Congress did not intend the calculation of fee awards [in federal civil rights actions] to vary depending on whether plaintiff was represented by private counsel or by a nonprofit legal services organization"); *Link v. District of Columbia*, 650 A.2d 929, 934 (D.C. 1994).

It likewise cannot count, as a circumstance making a fee award "unjust," *Christiansburg*, 434 U.S. at 417, that Zujua rejected a settlement offer attorney Burke had made after filing the suit and seeking to learn Zujua's identity. Aside from this court's past rejection of the admissibility of settlement negotiations in a trial court's resolution of attorney's fee disputes, *see Lively v. Flexible Packaging Ass'n*, 930 A.2d 984, 994 (D.C. 2007),[14] the record terms of the settlement proposed here are much too ambiguous to support Ms. Burke's assertion that, rather than "easily resolve[]" the "entire dispute," Zujua "prefer[red] instead to

---

[14] Ms. Burke argues that her use of Zujua's refusal to settle as a "shield" against a fee request, rather than a "sword," was consistent with Fed. R. Evid. 408, cited in *Lively*. But the federal rule precludes the admission of evidence of "conduct or a statement made during compromise negotiations about [a] claim" to "either . . . prove or *disprove* the validity . . . of [the] . . . claim . . . ." Fed. R. Evid. 408 (a) (emphasis added). Burke undeniably was seeking to "disprove" Zujua's entitlement to fees.

litigate" and incur unnecessary litigation costs (Br. for Appellee at 2, 22). Zujua sought to end the litigation (as to it) at the earliest possible stage via a special motion to quash. Ms. Burke, by contrast,

> was on notice from the time [that] motion was filed that [Zujua] believed her lawsuit was a SLAPP. The fee-shifting provision is plain on the face of the Anti-SLAPP statute. Had Ms. Burke wished to minimize her potential exposure to a fee award, she could have dismissed her lawsuit at any time, rather than continue after [Zujua] rejected her settlement offer.

Brief for *Amicus Curiae* at 21-22.

## E.

In light of the trial judge's refusal to award attorney's fees altogether, he did not reach Ms. Burke's summary challenge to the reasonableness of the amount of fees Zujua was requesting. Despite the largely conclusory nature of that challenge,[15] we elect to remand the case to the trial judge to evaluate the

---

[15] Ms. Burke asserted, for example, that the requested fee amount was

(continued…)

reasonableness of the award requested — a request, we add, that was necessarily augmented by the costs of litigating the initial appeal in this case. The trial court will also have to assess the reasonableness of the fee amount that Zujua has indicated it will seek for attorney work subsequent to the original fee request — so-called "fees on fees." Given the already protracted nature of the litigation, this court may be forgiven for expressing the hope that an accommodation between the parties will spare the trial court these remaining tasks.

*Reversed* and *remanded.*

---

(…continued)

"unreasonable on its face" given that "[t]his lawsuit did not result in extensive work, such as reviewing voluminous documents, taking and defending depositions, and going to trial"; and that "[t]he Center devoted all three of its lawyers to this case and then billed for a significant number of meetings amongst themselves."

MᴄLᴇᴇsᴇ, J., *concurring in part and dissenting in part*:  I agree that the trial court's order denying attorney's fees to Mr. Doe should be vacated.    I write separately because my reasoning differs from the court's reasoning in several significant respects.

The court interprets the District's Anti-SLAPP Act as presumptively entitling a successful movant to an award of attorney's fees, unless special circumstances would render such an award unjust.  Although the issue is not free from doubt, I conclude that the Act is better read to give trial courts discretion whether to award attorney's fees to successful movants.

**I.**

A.  *Statutory Language.*

The Act provides that trial courts "may" award attorney's fees to successful movants.  D.C. Code § 16-5504 (a) (2015 Supp.).  As the court acknowledges, "[u]se of the word 'may' in a statute ordinarily denotes discretion."  *In re Langon*, 663 A.2d 1248, 1250 (D.C. 1995) (interpreting word "may" as "manifest[ing] a

legislative intent to confer upon the trial court considerable discretion"); *see also, e.g.*, *In re J.D.C.*, 594 A.2d 70, 75 (D.C. 1991) ("[T]he word 'may' . . . is quintessentially permissive."); *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005) ("The word 'may' clearly connotes discretion.") (brackets and internal quotation marks omitted); *Haig v. Agee*, 453 U.S. 280, 294 n.26 (1981) ("'[M]ay' expressly recognizes substantial discretion."). In interpreting section 16-5504 (a), we must give significant weight to the ordinary meaning of "may." *See, e.g.*, *Zukerberg v. District of Columbia Bd. of Elections & Ethics*, 97 A.3d 1064, 1073 (D.C. 2014) ("We construe the words of the statute according to their ordinary sense and with the meaning commonly attributed to them.") (brackets, ellipses, and internal quotation marks omitted); *Flores v. United States*, 37 A.3d 866, 868 (D.C. 2011) (in absence of statutory definition, "we presumptively accord [statutory terms] their ordinary meaning in common usage, taking into account the context in which they are employed") (internal quotation marks omitted).

It is true that "may" sometimes can be interpreted to mean "shall" or "presumptively shall." *See, e.g.*, *In re Langon*, 663 A.2d at 1250 ("[T]he meaning of the word 'may' in a particular statute depends on the context of the statute, and on whether it is fairly to be presumed that it was the intention of the legislature to

confer a discretionary power or to impose an imperative duty . . . .") (internal quotation marks omitted); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978) (holding that civil-rights statute providing that court "may" award attorney's fees to prevailing plaintiff requires fee award "in all but special circumstances"). Because such interpretations are inconsistent with the ordinary meaning of "may," however, we should not adopt them lightly. Rather, we should do so only if we are confident that is what the legislature intended. *Cf., e.g.*, *Minor v. Mechanics Bank*, 26 U.S. 46, 64 (1828) (Story, J.) (although "may" can be interpreted as "must," "[t]he ordinary meaning of the language[] must be presumed to be intended, unless it would manifestly defeat the object of the provisions"). I lack confidence that the Council intended, by using the word "may," to presumptively require a fee award to successful movants under the Act.

B. *Statutory Structure.*

As the court points out, a party who successfully opposes an Anti-SLAPP Act motion may be awarded fees only if the motion was "frivolous or . . . solely intended to cause unnecessary delay." D.C. Code § 16-5504 (b). No such limitation is imposed on fee awards to successful movants. D.C. Code

§ 16-5504 (a). I agree with the court that this difference "impliedly but clearly rejects" the view that fee awards to successful movants could properly be limited to cases in which the respondent's position was frivolous or taken in bad faith. The court goes further, though, and infers from this difference "alone" that successful movants should presumptively be awarded fees. I see no basis for this further inference. Rather, the structure of section 16-5504 is entirely consistent with a conclusion that trial courts have discretion whether to award fees to successful movants. The Second Circuit has reached the same conclusion under 15 U.S.C. § 3611 (2014), which has a structure quite similar to that of D.C. Code § 16-5504. *See 305 E. 24th Owners Corp. v. Parman Co.*, 994 F.2d 94, 96 (2d Cir. 1993) (per curiam) (under 15 U.S.C. § 3611(d), relief "may include" reasonable attorney's fees, but defendant may recover fees only if plaintiff's action was "frivolous, malicious, or lacking in substantial merit"; court concludes that whether to award fees to prevailing plaintiff was "within the discretion of the court"); *605 Park Garage Assocs., LLC v. 605 Apartment Corp.*, 412 F.3d 304, 306 (2d Cir. 2005) (per curiam) (affirming denial of fees to prevailing plaintiff under 15 U.S.C. § 3611(d) as within trial court's discretion to award fees when doing so would be "fair, just and equitable") (internal quotation marks omitted).

The Second Circuit's interpretation of 15 U.S.C. § 3611 contradicts the reasoning of the court in this case. Closer to home, this court recently analyzed the fee provision in the District of Columbia Freedom of Information Act, D.C. Code § 2-537 (c) (2015 Supp.), which provides that prevailing plaintiffs "may" be awarded fees but does not provide for an award of fees to prevailing defendants. *Fraternal Order of Police, Metro. Police Dep't Labor Comm. v. District of Columbia*, 52 A.3d 822 (D.C. 2012) ("*FOP*"). Under the approach adopted by the court in the present case, the provision at issue in *FOP* should have been viewed as ordinarily calling for an award of fees to prevailing plaintiffs. The court in *FOP* made no reference to such a principle. To the contrary, the court held that both "the plain language of the statute" and the applicable legislative history demonstrated that "'may' ha[d] its ordinary permissive meaning." 52 A.3d at 827-28.

In support of the statement that fee provisions with a structure like that of section 16-5504 call in the ordinary course for an award of attorney's fees to prevailing plaintiffs, the court cites as a "paradigmatic example" the fee provisions in federal civil-rights statutes. In reality, however, the Supreme Court concluded that prevailing plaintiffs should presumptively be awarded fees under the civil-

rights statutes not because of the structure of the fee provisions in those statutes but rather because successful civil-rights plaintiffs act as private attorneys general, "vindicating a policy that Congress considered of the highest priority." *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402 (1968) (per curiam); s*ee also Christiansburg*, 434 U.S. at 418 (fees should presumptively be awarded to prevailing plaintiff under civil-rights statute based on "two strong equitable considerations": prevailing plaintiff "is the chosen instrument of Congress to vindicate a policy that Congress considered of the highest priority" and "when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law") (internal quotation marks omitted). As I explain later in this opinion, a successful Anti-SLAPP Act movant is not in these respects comparable to a plaintiff who has prevailed in establishing that the defendant violated the federal civil-rights laws.

C. *Legislative History.*

The court concludes that "[n]othing in the legislative history implies . . . that the Council had in mind granting broad or loosely constrained discretion to the trial court to award or deny attorney's fees" to a successful movant. In my view,

however, the legislative history on balance points in favor of the conclusion that the legislature meant "may" to be understood in its usual sense of conferring discretion. The strongest indications appear in the applicable committee report. We have found committee reports to be particularly persuasive evidence of legislative intent. *Cf., e.g.*, *Board of Trs. of Univ. of District of Columbia v. Joint Review Comm. on Educ. in Radiologic Tech.*, 114 A.3d 1279, 1285 (D.C. 2015) ("[T]he report of a Senate or a House committee[] is accorded a good deal more weight than the remarks even of the sponsor of a particular portion of a bill on the floor of the chamber.") (internal quotation marks omitted).

The applicable committee report at one point refers to the Act as "[p]rovid[ing] for the awarding of fees" to successful movants. D.C. Council, Report on Bill 18-893 at 8 (Nov. 18, 2010). That reference does not shed light on whether the Council intended such awards to be discretionary or presumptively mandatory. Two other statements in the committee report, however, speak more directly to that question, describing the Act as "allow[ing]" for an award of fees to successful movants. *Id.* at 4, 6. As the Supreme Court of Colorado observed when interpreting a constitutional amendment that "allowed" reasonable attorney's fees to successful plaintiffs, "[d]ictionary definitions of the common usage of 'allow'

. . . are synonymous with the word 'permit.'" *City of Wheat Ridge v. Cerveny*, 913 P.2d 1110, 1114 (1996) (construing amendment to give trial courts discretion as to whether to award fees to prevailing plaintiffs). The committee report on the Act thus indicates that the Council intended to give trial courts discretion as to whether to award fees to a successful movant. Moreover, the language of the committee report in no way suggests that the Council intended to make fee awards to prevailing movants presumptively mandatory.

In concluding that the legislative history of the Act supports a conclusion that fee awards to successful movants are presumptively mandatory, the court relies on two main points. First, the court relies on the Act's long title, which lists among the Act's purposes "to award the costs of litigation to the successful party on a special motion." It is appropriate to consider a statute's title when interpreting the statute. *Mitchell v. United States*, 64 A.3d 154, 156 (D.C. 2013). Nevertheless, "[t]he significance of the title of the statute should not be exaggerated." *Id.*; *see also, e.g.*, *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528 (1947) ("Th[e] heading is but a short-hand reference to the general subject matter involved. . . . [H]eadings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference

guide or a synopsis. Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles."). The Act's title refers to fee awards to successful movants but does not specify whether such fees must always be awarded or, if not, whether such awards should be presumptive or instead discretionary. Thus, the Act's title appears to be a shorthand reference rather than a reliable indication of the precise meaning of the Act's fee provision.

Second, the court notes the committee report's observation that the Act "closely mirrored" then-pending federal Anti-SLAPP legislation.[1] As the court

---

[1] Mr. Doe interprets the committee report as stating that the fee-shifting provision of the Act mirrored fee-shifting provisions in other federal statutes. I do not read the committee report that way. Rather, although the committee report at one point refers imprecisely to the pending federal legislation as "federal law," both references in the committee report in context indicate that the Council was mirroring other Anti-SLAPP provisions, not fee-shifting provisions in previously enacted federal statutes. Report at 1 (Act "follows the model set forth in a number of other jurisdictions, and mirrors language found in federal law, by incorporating substantive rights that allow a defendant to more expeditiously, and more equitably, dispense of a SLAPP"), 4 (Act "closely mirrored the federal legislation introduced" in 2009).

acknowledges, however, the attorney's fee provision in the Act does not mirror the attorney's fee provision in the pending federal legislation. To the contrary, the pending federal legislation used explicitly mandatory language, providing that the trial court "shall" award attorney's fees to a successful movant. Citizen Participation Act, H.R. 4364, 111th Cong. § 8(a) (2009). It would be natural to infer that, by choosing explicitly permissive language, rather than the mandatory language of the pending federal legislation, the Council was intentionally rejecting the mandatory approach reflected in the pending federal legislation, in favor of a discretionary approach. *Cf., e.g.*, *Rea v. Federated Inv'rs*, 627 F.3d 937, 940 (3d Cir. 2010) (where later legislation was modeled on earlier legislation, "any differences between the two are a result of Congress acting intentionally and purposefully"); *cf. generally Russello v. United States*, 464 U.S. 16, 23-24 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."; "Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended.") (brackets omitted).

Finally, the court mentions in a footnote an email exchange between a Council staff member and a witness who testified in support of the Act. In my view, the court appropriately places little weight on that email exchange. *Cf., e.g.*, *In re Kline*, 113 A.3d 202, 209 n.3 (D.C. 2015) (in interpreting court rule, court notes that letter from Department of Justice official to court rules committee "sheds no light on the thinking of the decision makers and, therefore, must be viewed with some skepticism. . . . Moreover, evidence which is of little probative value should not control over the customary meaning of the words used in the rule and the comment."); *People v. Patterson*, 84 Cal. Rptr. 2d 870, 873 (Ct. App. 1999) (declining to consider "private communications by a legislative staffer" in interpreting statute).

D. *Analogy to Federal Civil-Rights Statutes.*

As previously noted, the court suggests that the Act's fee provision is analogous to the fee provisions in certain federal civil-rights statutes, which use discretionary language but have nevertheless been interpreted to presumptively require fee awards to prevailing plaintiffs. *See Christiansburg*, 434 U.S. at 417; *Newman*, 390 U.S. at 402; *see also Tenants of 500 23rd St., N.W. v. District of*

*Columbia Rental Hous. Comm'n*, 617 A.2d 486, 487-88 (D.C. 1992) (because they act as "private attorneys general," tenants prevailing in actions brought under Rental Housing Act are presumptively entitled to fee award under D.C. Code § 42-2592 (1990) (now codified at D.C. Code § 42-3509.02 (2012 Repl.)), which provides that court "may award" fees to prevailing party). I view this analogy as strained.

The Supreme Court has identified two primary rationales for presumptively requiring an award of fees to prevailing plaintiffs under the federal civil-rights statutes: (1) such plaintiffs serve as private attorneys general, and (2) the defendants in such cases violated federal law. *Martin*, 546 U.S. at 137 (trial courts have discretion as to whether to award fees if case that was initially removed from state to federal court is subsequently remanded back to state court pursuant to 28 U.S.C. § 1447(c) (2014); making fee award presumptive was unwarranted because successful litigant was not private attorney general and did not establish violation of federal law). We emphasized similar rationales when we held that prevailing tenants are presumptively entitled to a fee award under the Rental Housing Act. *See Tenants of 5300 23rd St., N.W.*, 617 A.2d at 488; *Hampton Cts. Tenants' Ass'n v. District of Columbia Rental Hous. Comm'n*, 573 A.2d 10, 11-13

(D.C. 1990). I am doubtful that either rationale applies to motions filed under the Anti-SLAPP Act.

I do not deprecate the free-speech interests that can be protected by a successful motion under the Act. But it is not clear to me that successful movants are properly viewed as serving as private attorneys general. There is no reference to that idea in the legislative history of the Act, and the court in the present case does not suggest that successful movants should be viewed as private attorneys general. Moreover, a successful movant does not establish that the respondent violated any law, federal or local. Rather, such a movant establishes only that the plaintiff's underlying lawsuit arises from an act of advocacy on a matter of public interest and that the plaintiff was unable to make a pretrial showing of likely success on the merits. D.C. Code §§ 16-5502, -5503 (2015 Supp.).

In my view, the procedural character of motions under the Act tends to weaken the view that fee awards to successful movants should be presumptively mandatory. For example, imagine a libel defendant who is sued for speaking out on a matter of public concern, but who is unable to prevail in a pretrial Anti-SLAPP Act motion. Imagine further that the defendant nevertheless

ultimately persuades a factfinder that the plaintiff's suit was not meritorious. Barring bad faith or other unusual circumstances, such a defendant has no right to attorney's fees. It seems somewhat counterintuitive to construe the Act as presumptively mandating a fee award to defendants who can prevail pretrial, given that defendants who prevail after a trial will only be eligible for a fee award in unusual circumstances. The court responds that a plaintiff who successfully opposes an Anti-SLAPP Act motion in a case involving public advocacy "will have shown a likelihood that the speech was 'malicious,' so as to largely trump First Amendment concerns." The court does not explain, however, why a plaintiff's simply making a pretrial showing of likely success on the merits "largely trump[s]" First Amendment concerns, even where the defendant ultimately persuades the jury that the speech at issue could not under the First Amendment be the basis for a libel award.

E. *Anti-SLAPP Statutes in Other Jurisdictions.*

The committee report concerning the Act noted that, as of January 2010, approximately twenty-eight other jurisdictions had adopted Anti-SLAPP statutes. Report at 3. The report also indicated that the Act "follows the model set forth in a

number of other jurisdictions." *Id*. at 1.  On the issue of fee awards, however, the Act is worded quite differently from most other Anti-SLAPP statutes.   Most Anti-SLAPP statutes explicitly make fee awards to successful movants mandatory, typically using the word "shall." *See, e.g.*, Cal. Civ. Proc. Code § 425.16(c) (West, Westlaw through ch. 1 2016 Reg. Sess. & ch. 1 2015-2016 2d Ex. Sess.); Fla. Stat. Ann. § 768.295(4) (West, Westlaw through 2015 1st Reg. Sess. & Special A Sess.); 735 Ill. Comp. Stat. Ann. § 110/25 (West, Westlaw through P.A. 99-500 2015 Reg. Sess.).   Several Anti-SLAPP statutes, however, explicitly limit fee awards to specific circumstances, such as when the plaintiff's suit lacked a substantial basis. *See, e.g.*, Del. Code Ann. tit. 10, § 8138(a)(1) (West, Westlaw through 80 Laws 2015, ch. 194); N.Y. Civ. Rights Law § 70-a(1)(a) (McKinney, Westlaw through chs. 1-589 2015).  I have located only one Anti-SLAPP statute that uses language similar to the pertinent language in the fee provision of the District's Anti-SLAPP Act. *See* Me. Rev. Stat. Ann. tit. 14, § 556 (West, Westlaw through 2015 1st Reg. Sess.) (court "may award" fees to successful movant).  That statute has been interpreted by the Maine Supreme Court to give trial courts discretion as to whether to award fees, not to require that fees be presumptively awarded. *See Maietta Constr., Inc. v. Wainwright*, 847 A.2d 1169, 1174-76 (2004) (holding that language of provision clearly confers discretion; court refuses to

"infer a presumption of attorney fees in the face of a permissive statutory grant"). I note, however, that the decision in *Maietta* rests in part on Maine's rejection, as a matter of local law, of the approach taken by the Supreme Court with respect to fee awards under federal civil-rights statutes. *Id.* at 1176. This court, by contrast, has followed the Supreme Court's approach as a matter of local law. *See, e.g.*, *Tenants of 5300 23rd St., N.W.*, 617 A.2d at 487-88.

I draw two principal conclusions from the approaches taken by other jurisdictions. First, legislatures have taken various views on whether, as a matter of policy, fee awards to successful Anti-SLAPP Act movants should be mandatory or available only in more limited circumstances. Second, when the Council enacted the fee provision of the District's Anti-SLAPP Act, it had numerous models to consider. The Council did not adopt either of the two most common models: making fee awards mandatory or making them available only in specified circumstances. Rather, it picked language that, most naturally understood, charts a middle course, leaving to the discretion of trial judges whether to awards fees to successful Anti-SLAPP Act movants. Under well-settled principles of statutory interpretation, we should infer that the Council's choice was intentional. *See, e.g.*, *Russello*, 464 U.S. at 23; *Rea*, 627 F.3d at 940.

F. *Conclusion.*

In sum, I view the language of the Act's fee provision as pointing in favor of the conclusion that trial judges have discretion whether to award fees to successful Anti-SLAPP Act movants. The other tools of statutory interpretation, considered as a whole, on balance point in the same direction. I therefore would so hold.

**II.**

Although I do not agree with the court that a fee award here was presumptively mandatory rather than discretionary, I nevertheless agree with the court that the trial court's order denying a fee award should be vacated. Specifically, I agree with the court that the trial court placed undue emphasis on the conclusions that Ms. Burke's suit was not frivolous or brought in bad faith. I also agree with the court that the trial court erred by placing weight on the fact that Mr. Doe was represented pro bono by an advocacy group. I assume arguendo that settlement negotiations might in some circumstances be admissible in determining whether to award attorney's fees. *But cf. Lively v. Flexible Packaging Ass'n*, 930 A.2d 984, 994 (D.C. 2007) (statement made during settlement negotiations not

admissible in determining amount of attorney's fees). Even on that assumption, I agree with the court's suggestion that Ms. Burke's settlement offers were too ambiguous to provide significant support for a decision to deny a fee award. In particular, Ms. Burke's offers appear to have been contingent on (1) Mr. Doe's waiver of any claim for fees and (2) an unspecified enforcement mechanism that might permit the suit to be unilaterally reinstated by Ms. Burke.

In some contexts, this court has adopted specific tests to govern a trial court's discretionary determination whether to award fees. *See, e.g.*, *FOP*, 52 A.3d at 828-32 (four-factor test for fee awards under D.C. Freedom of Information Act); *Sanders v. International Soc'y for Performance Improvement*, 740 A.2d 34, 35 n.4 (D.C. 1999) (adopting federal test governing fee awards under federal Employee Retirement Income Security Act); *Frazier v. Franklin Inv. Co.*, 468 A.2d 1338, 1341 (D.C. 1983) (twelve-factor test for fee awards under Truth in Lending Act); *Ritz v. Ritz*, 197 A.2d 155, 156-57 (D.C. 1964) (non-exhaustive list of factors applicable to fee awards in domestic-relations cases). Neither this court nor any other of which I am aware has yet developed such a test applicable to fee requests submitted by successful Anti-SLAPP Act movants. The parties have not briefed the question whether this court should adopt such a test and, if so, what that test

should look like. I therefore would not be inclined to attempt to address those questions in the first instance. Rather, I would simply vacate the trial court's order denying a fee award and remand for a "reasoned exercise of the court['s] discretion." *FOP*, 52 A.3d at 828 (internal quotation marks omitted). I therefore respectfully concur in part and dissent in part.